2016 PA Super 240

| JOHN NOBLES | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| STAPLES, INC., STAPLES THE OFFICE SUPERSTORE EAST, STAPLES THE OFFICE SUPERSTORE, LLC | |
| Appellees | No. 2939 EDA 2015 |

Appeal from the Order Dated August 18, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): March Term, 2013, No. 2406

BEFORE:  BOWES, J., OTT, J., and SOLANO, J.

OPINION BY SOLANO, J.:                      **FILED NOVEMBER 08, 2016**

Appellant John Nobles appeals from the order entered on August 18, 2015, granting summary judgment in favor of Staples, Inc.; Staples the Office Superstore East; and Staples the Office Superstore, LLC (collectively, "Staples"), in his action to recover damages for personal injuries.  We affirm.

Nobles was a corporal in the Philadelphia Police Department.  On April 5, 2011, he was at his office desk when the chair on which he was sitting snapped at the base and fell to the floor.  Nobles hit his head as he fell and sustained injuries to his neck, back, and right shoulder.  Trial Court Opinion, 2/9/16, at 2.

Ten minutes after the incident, Nobles photographed the chair.  The base of the chair was still upright, but the rest of the chair was on the floor. A few days later, another police officer disposed of the chair, and, as a

result, the chair was not available for inspection during this litigation. **See** Trial Court Opinion, 2/9/16, at 2.

The chair was purchased in 2008, but there is no documentation that memorializes the purchase. Trial Court Opinion, 2/9/16, at 2. Nobles claims the chair was purchased from Staples, Nobles' Brief, at 6, 8, but Staples denies that contention and claims that it has not been able to verify that it sold a chair of the type at issue. **See** Trial Court Opinion, 2/9/16, 8. There is no documentation regarding the chair's specifications or its history over the three years between its purchase and the incident. **Id.** at 2.

In March 2013, Nobles filed this personal injury action against Staples, contending that the chair had been purchased from Staples and that defects in the chair caused its collapse. Trial Court Opinion, 2/9/16, at 1, 6.

On March 31, 2014, Staples moved for summary judgment on the ground that Nobles was unable to prove that the chair had been purchased from Staples. On May 30, 2014,[1] in a written order, the Honorable Annette M. Rizzo denied Staples' motion without prejudice, "as the Motion was filed prior to the expiration of the discovery period."

On November 24, 2014, Staples again moved for summary judgment, repeating the same ground as that in its first motion. On January 20, 2015,

_____

[1] The order was entered on the docket on June 2, 2014.

the Honorable Frederica Massiah-Jackson entered an order denying that second summary judgment motion, without further comment.

On April 22, 2015, Staples filed two motions *in limine*. First, Staples moved for "an order from the court barring [Nobles], [Nobles'] expert, or any other witnesses from testifying that they were told that the chair was purchased from Staples." Second, Staples moved to bar the testimony of Nobles' liability expert, Keith A. Bergman, P.E. Nobles filed responses in opposition to both motions on May 4, 2015.

On May 18, 2015, after jury selection but before trial, the Honorable Mary D. Colins heard argument on the two motions *in limine* and granted both. N.T., 5/18/15, at 11, 15, 20-21. In light of those decisions, Judge Colins then granted Staples' motion to dismiss the action. *Id.* at 22. The court's dismissal was recorded on the docket as entry of a "non-suit," but, in a Rule 1925(a) opinion, the trial court characterized its decision as equivalent to entry of summary judgment. Trial Court Opinion, 2/9/16, at 4.

On September 11, 2015, Nobles filed a notice of appeal, and he now presents the following issues for our review:

> 1.    May a trial court grant a defendant's motion for non-suit on the eve of trial where the plaintiff has not had the opportunity to present evidence and only pre-trial motions had been ruled upon?
>
> 2.    Is it a violation of the coordinate jurisdiction rule for a trial court to grant a motion for non-suit, which it deemed a motion for summary judgment, after the court had already denied a motion for summary judgment?

- 3 -

3. May a trial court grant a verbal motion for non-suit on the eve of trial when witnesses are prepared to testify as to the dispositive issue within the motion for non-suit?

4. Did the lower court err in barring the trial testimony of [Nobles'] expert, Keith Bergman, P.E., regarding the cause of the chair's failure?[2]

5. May a trial court bar expert testimony submitted under a malfunction theory of liability where it is properly based on fact and essential to the plaintiff's case?

Nobles' Brief, at 4-5 ¶¶ 1-5. We have reordered the sequence in which we address these issues.

**The Exclusion of Bergman's Testimony**

We first consider Nobles' fourth and fifth issues, in which he asserts that the trial court's exclusion of Mr. Bergman's testimony was erroneous. Nobles' Brief, at 5 ¶¶ 4-5.[3] The admission of expert testimony is a matter committed to the discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Commonwealth v. Walker*, 92 A.3d 766, 772 (Pa. 2014). An abuse of discretion "is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality,

---

[2] Nobles does not appeal the trial court's grant of Staples' other motion *in limine*, which barred as hearsay any testimony concerning where the chair was purchased.

[3] Although Nobles lists these issues separately, we deem them to raise the same issue regarding the admissibility of Nobles' proffered expert.

- 4 -

prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Id.* at 772–73 (citation omitted).

According to Mr. Bergman's expert report, he would have testified that Nobles "did not cause this incident to occur" and that the "failure of the connection of the bell and post column of the incident chair caused this incident to occur." Bergman Engineering Report, 11/17/14, at 11 (attached as Exhibit "I" to Nobles' Response in Opposition to Staples' Motion for Summary Judgment).

In its opinion, the trial court thoroughly reviewed this proffer and concluded that Mr. Bergman's report was based "on little more than guess and conjecture" and was insufficient to meet the standards for expert evidence. Trial Court Opinion, 2/9/16, at 6-9. The trial court explained:

> [Mr. Bergman's] report is notable for what it does not do. It does not state, even in general terms, what the defect is. It does not state or even speculate about how the defect caused the break. It does describe the [Business and Institutional Furniture Manufacturers Association's] X5.1-2002 "standard"[, but it does not] state how the construction or materials used would not have met that standard. He says only that the purpose of the standard is to ensure a chair's ability to withstand certain maximum impacts. The report also cites no facts in the record to support a conclusion that the chair was defective when it left the seller in 2008, a necessary element of the cause of action. The only physical evidence was the photo [that Nobles took of the chair after it broke,] and the Staples representative testified that this photo did not allow her to confirm either the type or model of the chair; the chair was not otherwise identified. Pages 9-14, deposition transcript of Jaclyn Smith, Staples' chair buyer, attached as Exhibit F to defendant's 11/26/2014 motion for summary judgment. Bergman's opinion, then, was uninformed by any information about the chair's manufacture, specifications, materials, features, warnings, or

history. There was no evidence of this chair's structure, particularly at the joint where the break occurred. No evidence was available that would have enabled examination or testing of an exemplar. Bergman cited no evidence that he eliminated all other possible causes of the break in the chair. In short, there was no defect evidence, circumstantial or otherwise, to support an opinion.

Nevertheless, Bergman opines that since the chair broke, it was defective. Without saying why or how, he presses the inference that that since the chair broke, it must have been defective [in] its weight bearing properties. This is circular reasoning that rests on no factual foundation and is insufficient to support expert analysis. At best, it is ordinary *res ipsa loquitur* dressed up as expert opinion.

Trial Court Opinion, 2/9/16, at 8-9. The trial court therefore concluded that it "properly barred [Mr.] Bergman's testimony because it lacked foundation." *Id.* at 6.

We agree. Pennsylvania Rule of Evidence 702 "permits expert testimony on subjects concerning 'knowledge beyond that possessed by a layperson.' It is the job of the trial court to 'assess the expert's testimony to determine whether the expert's testimony reflects the application of expertise or strays into matters of common knowledge.'" **Snizavich v. Rohm & Haas Co.**, 83 A.3d 191, 194 (Pa. Super. 2013) (citations to quoted authorities omitted). We have explained:

Admissible expert testimony that reflects the application of expertise requires more than simply having an expert offer a lay opinion. "Testimony does not become scientific knowledge merely because it was proffered by a scientist." Likewise, expert testimony must be "based on more than mere personal belief," and "must be supported by reference to facts, testimony or empirical data."

*Id.* at 195 (citations to quoted authorities omitted). Accordingly, we have stated the following test to distinguish between admissible expert testimony and inadmissible lay testimony by an expert:

> The exercise of scientific expertise requires inclusion of scientific authority and application of the authority to the specific facts at hand. Thus, the minimal threshold that expert testimony must meet to qualify as an expert opinion rather than merely an opinion expressed by an expert, is this: the proffered expert testimony must point to, rely on or cite some scientific authority — whether facts, empirical studies, or the expert's own research — that the expert has applied to the facts at hand and which supports the expert's ultimate conclusion. When an expert opinion fails to include such authority, the trial court has no choice but to conclude that the expert opinion reflects nothing more than mere personal belief.

*Id.* at 197.

In **Snizavich**, Dr. Thomas Milby proffered evidence that the decedent, whose estate brought the suit, developed brain cancer as a result of exposure to chemicals while working at a chemical facility. In forming his opinion, the doctor "reviewed nine documents, eight of which dealt with Decedent's medical history, work history, and work conditions," and the ninth of which was an inconclusive epidemiological report about the statistical occurrence of brain cancer at the facility. He then "concluded, based on the nine documents he reviewed as well as his years of expertise in epidemiology, toxicology and occupational medicine that Decedent's brain cancer had been caused by exposure to an unknown chemical or chemicals, while working at [the facility]." 83 A.3d at 197. This Court held the testimony inadmissible, explaining:

Missing from Dr. Milby's expert report is any scientific authority — any facts, testimony or empirical data — that supports his conclusion. . . . The Milby Report may, therefore, be aptly described as . . . based "entirely on subjective assessments of both cause and effect," as it does not include any "research, conducted by [Dr. Milby] or anyone else, to support [his] assertion[] on causation."

*Id.* (quoting *Checchio v. Frankford Hosp.–Torresdale Div.*, 717 A.2d 1058, 1062 (Pa. Super. 1998) (excluding proffered expert testimony about cause of neurological dysfunction because it was based on subjective beliefs, rather than scientific evidence)).

Here, similarly, Mr. Bergman's report provides no reliable scientific basis for the views he propounds. The first eight pages of his twelve-page report merely reiterate information found elsewhere in the record, including a list of the materials submitted to Mr. Bergman for review, summaries of the depositions, and a photograph of the chair. *See* Bergman Engineering Report at 1-8. Another page of the report sets forth a history of the development of furniture regulations in the United States. *See id.* at 9. On page 10, Mr. Bergman describes the X5.1-2002 standard of the Business and Institutional Furniture Manufacturers Association ("BIFMA"), which, he says, "was intended to provide manufacturers, specifiers, and users with a common basis for evaluating the safety, durability, and structural adequacy of general-purpose office chairs." Mr. Bergman states that the standard employs a "Drop Test," in which test bags weighing 225 to 300 pounds are dropped on the chair's seat from a height of six inches to determine whether

the chair can "withstand heavy and abusive impact forces on the seat." *Id.* at 10. Mr. Bergman continues:

> The failure of the incident chair failed to comply with the BIFMA standard, resulting in this incident occurring. The structural components failed to withstand the weight of John Nobles sitting on the chair. Had the incident chair complied with the BIFMA standard, this incident would have been avoided.

*Id.* The remaining two pages of Mr. Bergman's report summarize his conclusions, state that "[t]his report may be supplemented if additional information becomes available," and contain Mr. Bergman's signature. *Id.* at 11-12.

As the trial court stated and as Staples elaborates in its brief, there is nothing in Mr. Bergman's report to show that he applied any scientific expertise to reach his conclusion that the chair was defective. Mr. Bergman did not inspect the chair at issue; he merely looked at a photograph taken after the chair broke. Nor did he examine an exemplar or any similar chair. As there was no evidence of the chair's structure, manufacture, specifications, materials, or features, it was impossible to identify such a similar chair. Mr. Bergman did not test the subject chair or any other chair. Thus, as the trial court observed, Trial Court Opinion, 2/9/16, at 8, Mr. Bergman does not state, "even in general terms, what the defect is" or how the chair broke, reporting only (on the basis of the post-accident

photograph) that the chair broke at "the connection of the bell and post column." Bergman Engineering Report at 4.[4]

Mr. Bergman does reference the BIFMA X5.1-2002 standard, but he provides no facts, studies, or independent research to show that the chair failed to meet that standard when it was made, which was at least three years before it broke. Nobles argues that the mere fact that the chair broke after three years suggests that it was not as durable as the X5.1-2002 standard requires, but that argument says no more than if a chair breaks after three years, it must be defective. The trial court aptly characterized such reasoning as "*res ipsa loquitur* dressed up as expert opinion." Trial Court Opinion, 2/9/16, at 9.

Nobles responds that, although "there is no direct evidence as to what caused the chair's malfunction," Mr. Bergman's expert opinion "was still

---

[4] Mr. Bergman's failure to state how the chair was defective or how it broke presents a stark contrast between this case and the main decision on which Nobles relies, **Duquesne Light Co. v. Woodland Hills Sch. Dist**., 700 A.2d 1038 (Pa. Cmwlth. 1997). In **Duquesne**, a school built on a hilltop was damaged by a landslide. A proposed geotechnical expert studied the landslide and opined that it was caused by the failure of a water line built into an embankment that was created to support the school structure, as well as "by absence of a proper embankment toe key." 700 A.2d at 1047. Although the expert was unable to explain — and therefore did not seek to testify about — why the water line failed (the line had been destroyed and was unavailable for study by the expert after the landslide) the court held that the opinion that the rupture caused the landslide should have been allowed. **Id.** at 1047-48. Here, in contrast to **Duquesne**, Mr. Bergman did not study the chair or opine on what caused it to break. Permitting his testimony would be equivalent to allowing the **Duquesne** expert to speculate about what caused the water line rupture.

based on a proper factual foundation as he was able to study a photograph of the chair after it failed and form an opinion on the reason for the failure based upon his specialized knowledge of recognized industry standards." Nobles' Brief, at 29. This Court's decisions in **Snizavich** and **Checchio** make clear, however, that such knowledge and references are not sufficient to support an expert opinion where the expert fails to "point to, rely on or cite some scientific authority — whether facts, empirical studies, or the expert's own research — that the expert has applied to the facts at hand and which supports the expert's ultimate conclusion." **Snizavich**, 83 A.3d at 197.

In sum, as the trial court held, Mr. Bergman's testimony would provide no more than an "inference that since the chair broke, it must have been defective in its weight bearing properties." Trial Court Opinion, 2/9/16, at 9. Such an inference is no more than speculation — a "subjective assessment[] of cause and effect," **Snizavich**, 83 A.3d at 197 — and, as in **Snizavich**, it is insufficient to satisfy the requirements for expert evidence.

The trial court's analysis of this issue was methodical, well-reasoned, and not "manifestly unreasonable." **Walker**, 92 A.3d at 772. As the admission of expert testimony is committed to the discretion of the trial court, and as we perceive no abuse of that discretion in the exclusion of Mr. Bergman's testimony, we affirm the trial court's decision with respect to Mr. Bergman.

## The Procedural Propriety of Dismissal

The following colloquy occurred at the time the trial court granted Staples' motion *in limine* to exclude Mr. Bergman's testimony:

> THE COURT:  I am going to grant your motion.  I believe the foundation is exceedingly weak, not supportive of expert testimony, for all the reasons that counsel has stated.
>
> So I am going to grant the motion and exclude the testimony of Bergman in this case.
>
> That leaves you with basically a products liability case which you plead against Staples and no expert.
>
> [COUNSEL FOR NOBLES]: I think, in effect, the Court has put us out of court because under the malfunction theory I still have to have some expert testimony to indicate the absence. So, in effect, you have put us out of the courtroom.
>
> THE COURT:  I think so.

N.T., 5/18/15, at 20-21.  The trial court then asked whether Staples had any further motion.  Counsel for Staples responded, "We would like to file a motion to dismiss the case.  There is going to be no evidence that is going to be able to support the case."  *Id.* at 21.  Counsel for Nobles made no argument in opposition to this motion to dismiss, but stated only, "I take an exception for the record, Your Honor."  *Id.* at 22.  The trial court then stated, "The motion to dismiss is granted," and adjourned the proceedings. *Id.*  The trial worksheet and the docket then recorded the dismissal as the granting of a motion for "non-suit."

In the first issue listed in his brief, Nobles contends that the trial court erred in granting the motion to dismiss because it was procedurally improper to grant a "non-suit" when Nobles had not yet presented evidence and only pre-trial motions had been decided.[5] We disagree.

As the trial court observed, a motion to dispose of a case after a jury is empaneled but before evidence is adduced may be treated under a variety of procedural devices, including a motion for summary judgment or for judgment on the pleadings. Trial Court Opinion, 2/9/16, at 4. For example, in *DiGregorio v. Keystone Health Plan E.*, 840 A.2d 361, 366-67 (Pa. Super. 2003), the defendant made a motion to dismiss the day after a jury was empaneled but before the presentation of any evidence. The trial court granted the motion and dismissed the case. On appeal, the parties disputed which procedural rules applied to the trial court's disposition. We resolved that issue as follows:

> Since the trial court disposed of the motion in chambers and since the jury heard no evidence, we cannot construe the trial court's disposition as a verdict, discharge due to the jury's failure to agree, or nonsuit. Rather, we conclude that the purported motion to dismiss either was a motion for judgment on the pleadings or a motion for summary judgment. *See Bostick* [*v. Schall's Brakes and Repairs, Inc.,* 725 A.2d 1232 (Pa. Super. 1999)]; *cf. Lewis v. United Hospitals, Inc.*, 547 Pa. 626, 692 A.2d 1055 (1997) (improper entry of nonsuit prior to plaintiff's evidence treated as judgment on the pleadings or summary

---

[5] *See* Pa.R.C.P. 230.1(a)(1) (a nonsuit may be entered "if, **at the close of the plaintiff's case on liability**, the plaintiff has failed to establish a right to relief" (emphasis added)).

judgment which did not require post-trial motions); **Wujcik v. Yorktowne Dental Associates, Inc.**, 701 A.2d 581 (Pa. Super. 1997) (noting that trial court should have treated objection to plaintiff's offer of proof before trial as summary judgment or motion for judgment on pleadings).

*Id.* at 365-66. Here, although the trial court's granting of Staples' "motion to dismiss" was docketed as a "non-suit," the trial court treated it as a grant of summary judgment, citing **DiGregorio**. Trial Court Opinion, 2/9/16, at 4.

The situation presented here is not uncommon. We have previously commented on "the murky quagmire often created when a pretrial ruling effectively determines the case, and the parties decide not to go through the fruitless effort and expense of putting on a trial when the result has already been determined." **Rivera v. Home Depot USA, Inc.**, 832 A.2d 487, 489 (Pa. Super. 2003). We observed in **Rivera**:

> One common example [of this situation] is when a pretrial motion is decided against a party, such as a motion to preclude an expert under **Frye**[6] or for failure to include a critical factor in the expert report. In that instance, the parties want to save the time and expense of a trial but also want to preserve the issue for appeal.

*Id.* This current case presents precisely the same situation that was discussed in **Rivera**, in which we approved of the trial court's ending of the case at this same point, through what we deemed to be a summary

---

[6] **Frye v. U.S.**, 293 F. 1013 (D.C. Cir. 1923).

judgment motion.  *Id.* at 489-90;[7] *see also Liles v. Balmer*, 653 A.2d 1237, 1240 (Pa. Super. 1994) (permitting nonsuit after preclusion of key testimony because plaintiff "had no remaining competent and relevant evidence to present on the issues of negligence and causation . . . [and her] case was essentially complete prior to the entry of nonsuit"), *appeal denied*, 663 A.2d 692 (Pa. 1995).  We perceive no error in the trial court's handling of the case in this way.[8]

In a reply brief, Nobles maintains that, although a court may grant a motion for summary judgment on the day of trial, it may not do so if entertaining the motion would cause undue prejudice to the non-moving party.  The standard for determining the propriety of an eleventh-hour grant of summary judgment is whether the non-moving party had notice that he must respond to the legal issue on which the motion is based and was afforded a full and fair opportunity to argue his position.  *Cagnoli v.*

---

[7] We observed in *Rivera* that a preferred procedure in this situation is for the parties to agree to treat the motion for dismissal as a motion for summary judgment, but we did not say that such an agreement on terminology is mandatory.  *See* 832 A.2d at 490.  Here, the record shows that Nobles agreed that dismissal was preordained once Staples' motion *in limine* was granted, and he therefore made no argument in opposition to the motion to dismiss.  Instead, Nobles merely recorded an "exception" that would permit a right of appeal.  In this situation, the trial court did not err in treating its dismissal order as an entry of summary judgment.

[8] Furthermore, if this appeal actually stemmed from a nonsuit, we would have to dismiss it, because Nobles failed to file a post-trial motion under Pa.R.C.P. 237.1(c).

- 15 -

*Bonnell*, 611 A.2d 1194, 1196 (Pa. 1992); *Philips v. Lock*, 86 A.3d 906, 914-15 (Pa. Super. 2014); *see also* Pa.R.C.P. 1035.3(e)(1) ("Nothing in this rule is intended to prohibit a court, at any time prior to trial, from ruling upon a motion for summary judgment without written responses or briefs if no party is prejudiced. A party is prejudiced if he or she is not given a full and fair opportunity to supplement the record and to oppose the motion"). Where the non-moving party has sufficient notice of the issues raised by the summary judgment motion and a full opportunity to respond, the granting of summary judgment on a motion made on the day of trial is not reversible error. *Phillips*, 86 A.3d at 911-15 (affirming grant of motion for summary judgment made by defendant on the morning of trial).

According to the record, Nobles received Staples' motions *in limine* over three weeks before trial. These filings included the precise legal issues, along with case law and facts, on which summary judgment ultimately was granted; thus, Nobles had ample notice. *See Robertson v. Port Auth. of Allegheny County*, 144 A.3d 980, 983-84 (Pa. Cmwlth. 2016) (plaintiff received notice of the precise legal issue upon which summary judgment was later based in a motion *in limine* filed about a week before an oral motion for summary judgment on the day of trial, and these circumstances provided "ample notice").

Additionally, Nobles was given an opportunity to argue his position immediately after the trial court decided the motion to exclude his expert's

testimony. However, when presented with that opportunity, Nobles' counsel stated: "I think, in effect, **the Court has put us out of court** because under the malfunction theory I still have to have some expert testimony to indicate the absence. **So, in effect, you have put us out of the courtroom.**" N.T., 5/18/15, at 21 (emphasis added). Hence, Nobles' own counsel essentially acknowledged that summary judgment was appropriate.[9] The trial court therefore did not err in dismissing the case.

### The Coordinate Jurisdiction Rule

In his second listed issue, Nobles argues that the trial court's grant of summary judgment violated the coordinate jurisdiction rule. Nobles' Brief, at 4 ¶ 2. "[T]he coordinate jurisdiction rule . . . provides that judges sitting on the same court in the same case should not overrule each other's decisions." *Commonwealth v. Daniels*, 104 A.3d 267, 278 (Pa. 2014). However, "a trial court may reconsider a summary judgment motion, already decided by a colleague of the same court when the motion contains new evidence or facts of record." *Elec. Lab. Supply Co. v. Cullen*, 712 A.2d 304, 308 (Pa. Super. 1998); *accord Bersani by Bersani v. Sch. Dist. of Phila.*, 456 A.2d 151, 153 (Pa. Super. 1982) ("The action of the second lower court judge in considering a second motion for summary judgment,

---

[9] Furthermore, if Nobles' counsel believed that he did not have sufficient opportunity to respond after Staples moved to dismiss, he could have requested that the trial court allow the parties to submit briefs before ruling on that motion, but he did not do so.

even though the prior motion had been denied, is justified by the large amount of new information added to the record in the time period between the two motions").

In the current action, once Judge Colins granted Staples' motions *in limine*, the status of the case changed materially. Therefore, the basis upon which Judge Colins granted the final motion for summary judgment was very different from the bases upon which Judge Rizzo and Judge Massiah-Jackson relied when they denied Staples' first and second motions for summary judgment several months earlier. Once Judge Colins held that Nobles' expert would not be allowed to testify, it became clear that there was no viable way in which Nobles could recover — as Nobles' counsel himself admitted when he told Judge Colins that she had "put us out of court." **See** Trial Court Opinion, 2/9/16, at 5-6. Accordingly, it was appropriate for Judge Colins to then grant Staples' motion to dismiss the case, even if that motion was the equivalent of a third motion for summary judgment. In doing so, the trial court did not violate the coordinate jurisdiction rule.

### The Substantive Propriety of the Dismissal

The remaining issue raised by Nobles is that the trial court erred when it granted Staples' motion to dismiss because Nobles' fact witnesses were prepared to testify as to the lack of any misuse of the chair on Nobles' part. Nobles' Brief, at 4 ¶ 3.

The trial court treated Staples' motion to dismiss as a motion for summary judgment. Our standard of review with respect to a trial court's decision to grant or to deny a motion for summary judgment is as follows:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*WFIC, LLC v. Labarre*, -- A.3d --, 2016 PA Super 209 (2016). *Accord Gilbert v. Synagro Cent., LLC*, 131 A.3d 1, 10 (Pa. 2015) (the scope of review for the grant of summary judgment is plenary; the trial court's order will be reversed only where it is established that court committed an error of law or clearly abused its discretion).

Nobles contends that his case was based on a malfunction theory of liability, Nobles' Brief, at 13, which permits "a plaintiff to prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the

malfunction." ***Beard v. Johnson & Johnson, Inc.***, 41 A.3d 823, 825 (Pa. 2012). Nobles' witnesses were prepared to testify on the second of these evidentiary requirements (elimination of other causes), but the exclusion of Nobles' expert made it impossible for Nobles to prove the first requirement — the occurrence of a "malfunction."[10] Thus, the trial court did not err in dismissing the case in the absence of such required proof.

Nobles appears to concede as much. His argument of this issue in his brief relates entirely to the contention that, if Mr. Bergman's expert testimony had not been excluded, he would have been able to establish a *prima facie* case of a defect and survive summary judgment. ***See*** Nobles' Brief, at 32-34; Nobles' Reply Brief, at 11-12. Nobles does not contend that he could survive summary judgment once the Bergman Engineering Report was excluded, and, in fact, he made a contrary admission at the time that the trial court granted dismissal. Accordingly, the trial court's grant of Staples' motion to dismiss, which it treated as a motion for summary judgment, was proper.

Judgment affirmed.

---

[10] We have held that a manufacturing defect sometimes can be proven by circumstantial evidence without expert testimony. ***See Wiggins v. Synthes (U.S.A.)***, 29 A.3d 9, 15 (Pa. Super. 2011). The trial court held that Nobles could not satisfy any of the non-expert ways of proving a malfunction or defect. ***See*** Trial Court Opinion, 2/9/16, at 11. Although Nobles challenges some of the trial court's conclusions regarding the evidence that he could present, Nobles does not argue that he could have proven his case without expert evidence.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/8/2016</u>