J-A08024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TAQUISHA THOMPSON | IN THE SUPERIOR COURT |
| | OF PENNSYLVANIA |
| Appellant | |
| | |
| v. | |
| | |
| THE CAFARO COMPANY T/D/B/A MILLCREEK MALL AND MILLCREEK MALL CORPORATION AND ASC REALTY OF PENNSYLVANIA INC. T/D/B/A MILLCREEK MALL COMPANY AND WARNER MANAGEMENT COMPANY, LTD | |
| | |
| Appellees | No. 1032 WDA 2018 |

Appeal from the Judgment Entered June 19, 2018
In the Court of Common Pleas of Erie County
Civil Division at No: 11594-2013

BEFORE:  PANELLA, P.J., STABILE, and McLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.:              **FILED JUNE 28, 2019**

In this premises liability action, Appellant, Taquisha Thompson ("Thompson"), appeals from the judgment entered on June 19, 2018 in the Erie County Court of Common Pleas after a jury returned a defense verdict in favor of Appellee, the Millcreek Mall Corporation ("the Mall").[1]  Appellant contends the trial court erred by precluding the testimony of her management systems expert and the testimony of a witness relating to the Mall bus stop

---

[1] By virtue of a stipulation and joint praecipe for discontinuance filed prior to trial, the parties dismissed all other defendants from the case.  The Mall is the only appellee in this appeal.

where Thompson fell, and erred in its instruction relating to the hills and ridges doctrine and exceptions thereto. Following review, we affirm.

A reading of the record reveals that on March 1, 2013, Thompson rode an Erie Metropolitan Transit Authority ("EMTA") bus to the Mall, arriving at 7:50 a.m. Thompson intended to transfer to another EMTA bus that would take her to Edinboro University where she was a student. As she stepped off the bus onto the sidewalk at the designated Mall bus stop, Thompson slipped and fell on a small patch of ice and sustained multiple fractures to her right ankle.

Thompson initiated this action by complaint filed on June 10, 2013, alleging, *inter alia*, that the Mall was negligent in permitting a dangerous condition to exist on the sidewalk and in failing to supervise or instruct personnel as to the proper procedure for preventing a dangerous condition on the sidewalk. The Mall denied it was negligent and, by way of new matter, alleged that Thompson's claims were precluded under the hills and ridges doctrine.[2]

The case proceeded to trial and, as indicated above, the jury returned a defense verdict, finding the Mall was not negligent. The trial court denied

---

[2] From our review of the docket, it appears Thompson did not file a reply to new matter, even though the new matter was properly endorsed with a notice to plead.

Thompson's motion for post-trial relief. This timely appeal followed. Both Thompson and the trial court complied with Pa.R.A.P. 1925.

Thompson presents three issues for this Court's review:

1. Is [Thompson] entitled to a new trial because the trial court precluded her certified safety professional expert from testifying about the management systems failures of a large shopping mall's method for sidewalk snow/ice removal, which was the primary contested issue at trial?

2. Did the trial court err in precluding as irrelevant, testimony from a bus passenger that the bus stop where [Thompson] fell was never cleared of snow/ice by 8:00 a.m.?

3. Did the trial court err in deciding to give a jury instruction on the Hills and Ridges Doctrine, and then compound that err (*sic*) by **giving an instruction that was an inaccurate statement of law**?

   A. Was a Hills and Ridges jury instruction supported by the facts of record?

   B. Was the final, written Hills and Ridges jury instruction given in response to a jury question an inaccurate statement of the law which constituted fundamental error and/or mislead the jury?

   C. Did [Thompson] waive objection to the trial court's mid-deliberations re-instruction on the Hills and Ridges doctrine?

Appellant's Brief at 3-4 (emphasis in original).[3]

_____

[3] We remind Appellant's counsel that Pa.R.A.P. 2135(d) mandates that a party file a certificate of compliance for principal briefs exceeding 30 pages in length, confirming that the brief does not exceed the 14,000 words permitted under Pa.R.A.P. 2135(a)(1). Appellant's brief spans 73 pages but does not include the requisite certificate.

Thompson's first and second issues involve evidentiary matters to which this Court applies an abuse of discretion standard of review. ***Nobles v. Staples, Inc.***, 150 A.3d 110, 113 (Pa. Super. 2016) ("admission of expert testimony is a matter committed to the discretion of the trial court and will not be disturbed absent an abuse of that discretion"); ***Schuenemann v. Dreemz, LLC***, 34 A.3d 94, 101 (Pa. Super. 2011) ("trial court's rulings regarding the relevancy of evidence will not be overturned absent an abuse of discretion"). "An abuse of discretion 'is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.'" ***Nobles***, 150 A.3d at 113 (quoting ***Commonwealth v. Walker***, 92 A.3d 766, 772-73 (Pa. 2014) (citation omitted)). Further, "[i]n order to find that the trial court's evidentiary rulings constituted reversible error, such rulings must not only have been erroneous but must also have been harmful to the complaining party." ***Oxford Presbyterian Church v. Weil-McLain Co., Inc.***, 815 A.2d 1094, 1100 (Pa. Super. 2003) (quoting ***Collins v. Cooper***, 746 A.2d 615, 619 (Pa. Super. 2000) (additional citations omitted)).

Thompson first argues the trial court erred in precluding testimony of her management systems expert. Again, we apply an abuse of discretion standard. ***Nobles***, 150 A.3d at 113.

The trial court noted:

The crux of Appellant's case was that the Mall was negligent for failing to have a protocol requiring the maintenance staff to start their daily snow removal operation at the point of the bus stop since people traverse that area first thing in the morning before the other areas of the mall. Prior to trial, [Thompson] submitted the expert report of a purported safety expert, David A. Dodge. Mr. Dodge would have testified that the Mall was negligent because they did not adopt a wintertime management program which would have included the inspection, snow removal and ice management earlier than 6:12 a.m., the time when the first EMTA bus stopped at the Mall each day.

Trial Court Opinion, 9/14/18, at 3. Prior to trial, the Mall filed a motion *in limine* seeking preclusion of Dodge's testimony, contending that the jury empaneled in the case would possess the qualifications necessary to determine whether the Mall took adequate measures to inspect and maintain its premises, without the assistance of an expert. Motion in Limine, 4/23/18, at 1-5. Over Thompson's written objection, the trial court issued an order granting the motion, finding "Dodge's opinion concerning the appropriate procedures for snow and ice removal does not constitute specialized knowledge unavailable to lay persons." Order, 5/3/18 at 1 (citing Pa.R.E. 702).

In her summary of argument, Thompson asserted:

The inadequacy of [the Mall's] management system used to perform snow/ice removal from its mall premises was the key issue at trial, and formed the essence of [Thompson's] theory of negligence. The mercantile safety planning considerations involved in that is not something with which the average layperson would be familiar. The testimony of [Thompson's] expert would have assisted the jury in fairly resolving this issue necessary for assessing negligence.

Appellant's Brief at 29.

- 5 -

The trial court based its ruling on Pennsylvania Rule of Evidence 702, which governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. As this Court has recognized, "Pennsylvania Rule of Evidence 702 'permits expert testimony on subjects concerning knowledge beyond that possessed by a layperson.' It is the job of the trial court to 'assess the expert's testimony to determine whether the expert's testimony reflects the application of expertise or strays into matters of common knowledge.'" **Noble**, 150 A.3d at 114 (quoting **Snizavich v. Rohm & Haas Co.**, 83 A.3d 191, 194 (Pa. Super. 2013) (additional citations omitted)). "Admissible expert testimony that reflects the application of expertise requires more than simply having an expert offer a lay opinion. 'Testimony does not become scientific knowledge merely because it was proffered by a scientist.'" **Id.** (quoting **Snizavich**, 83 A.3d at 195) (citations omitted). Further,

> if all the primary facts can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as are witnesses

possessed of special training, experience or observation, then there is no need for the testimony of an expert.

**Brandon v. Ryder Truck Rental, Inc.**, 34 A.3d 104, 108 (Pa. Super. 2011) (quoting **Reardon v. Meehan**, 227 A.2d 667, 670 (Pa. 1967)). "Thus, to be admissible, the expert testimony must be beyond the knowledge possessed by a layperson and assist the trier of fact to understand the evidence or determine a fact in issue." **Walker**, 92 A.3d at 780.

The trial court explained,

David A. Dodge would have been called by [Thompson], as her expert, to testify that the Mall should have, as a policy, removed the snow and ice at the bus stop before EMTA started dropping off passengers at 6:12 a.m. Mr. Dodge[] opines in his expert report as follows:

Ms. Thompson's incident was directly caused by the failure of the Millcreek Mall's management team to establish a managerial wintertime maintenance program that adequately provided for the safety of the foreseeable pedestrian activity on the mall premises under entirely predictable weather conditions.

The public bus driver let passengers off the bus at an exterior bus stop that was on the premises of the mall and which was under the control of the mall employees. The first bus stopped at the mall at 6:12 a.m. . . . however, the maintenance superintendent who is in charge of dispatching the mall maintenance employees for their daily duties, does not commence to assign their tasks until 7:00 a.m. Even when there is ice and/or snow to be removed from the mall's exterior sidewalks the maintenance crew always starts (after 7:00 a.m.) in the same place at the west side [of the] mall and works around the mall, which reportedly takes over 2½ hours to complete. The incident bus stop is on the east side of the mall and, therefore, would not receive any shoveling or ice melt until well after 7:50 a.m. after the public bus had already made six stops at the mall's bus stop.

(Dodge Expert Report, p. 3-5). This is a common sense argument about what areas to shovel first. Dodge's opinion does not proffer any specialized technical knowledge. [Thompson] claims that because the mall is a large commercial operation, the need for a commercial management snow removal policy is outside the knowledge of a juror whose experience would be limited to shoveling his or her own residential property. Yet, the bottom line is that the Mall should have shoveled the trafficked areas first. This is not such a technical concept that ordinary people could not understand it without professional help.

Trial Court Opinion, 9/14/18, at 5-6.

The court referenced excerpts from the cross-examination of a Mall maintenance employee and determined that Thompson's counsel "cogently made the common sense argument that the Mall should have had a policy requiring that the bus stop was cleared of snow and ice before the other sidewalks at the Mall." *Id.* The court continued, "[Thompson's] expert would not have added any additional insight into this theory. Dodge does not have 'technical knowledge which is beyond that of the average man.'" *Id.* (quoting *Reardon*, 227 A.2d at 670). Permitting Dodge's testimony would have been "an invitation for the trier of fact to abdicate its responsibility to ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment." *Id.* (quoting *Commonwealth v. Seese*, 517 A.2d 920, 922 (Pa. 1986)). Therefore, the court determined there was no need for expert testimony under the circumstances and "did not allow Mr. Dodge to usurp the function of the jury." *Id.* at 9 (citing *Reardon*).

We find no abuse of discretion in the trial court's conclusions. We agree the expert's opinion was unnecessary for the jury to evaluate the evidence

competently. While decisions from our sister states clearly are not binding on this Court, the Mall directs us to a case from New Hampshire, in which the district court similarly precluded Mr. Dodge's testimony in a case involving a fall on ice, relying on Fed.R.E. 702, the counterpart to Pa.R.E. 702. **See** Appellee's Brief at 13-14. In **Hecht**, the court observed:

> The court does not doubt that Mr. Dodge is an expert on safety issues. The problem is not his expertise but his opinion. He has merely placed an expert sheen on matters well within the jury's own ordinary experience and common sense. The report interweaves legal principles, reported "facts," common sense and matters of common knowledge.
>
> The plaintiff reported as a fact that there was one inch of snow covered ice in the area of his alleged fall. Every adult in New England (and most kids) know that untreated ice is slippery; that ice and snow is foreseeable in New Hampshire in January; and that it makes sense for a business to have an ice/snow treatment plan including exclusion from the area and/or treatment. The law requires reasonable steps to protect invitees from foreseeable and known hazards. In short, every significant area of his report is a matter of common sense or a legal standard.

**Hecht v. Waterville Dev. Corp.**, 2007 WL 542151, at **2-3 (D.N.H. February 16, 2007).

We also agree with the trial court's assessment that the preclusion did not prejudice Thompson. Through his cross-examination of Mall maintenance employees, Thompson's counsel was able to establish the lack of a written policy for snow and ice removal from Mall sidewalks,[4] the procedure followed

---

[4] Testimony established the existence of a written procedure for plowing Mall parking lots, a task contracted to an outside vendor.

by the first-shift maintenance employees for as long as anyone could remember, and the fact that employees never went first to the EMTA bus stop to shovel or de-ice before following their routine pathway around the Mall property, beginning near the maintenance garage located on the opposite side of the Mall. As the trial court recognized, Thompson's "counsel was able to make precisely the same point as would have been made by the expert. At most, [Thompson] would have been deprived, not of the theory, but rather of the cloak of authority worn by [Thompson's] safety expert." Trial Court Opinion, 9/14/18, at 10. Consequently, even if we were to find the trial court abused its discretion by precluding the expert testimony, there would be no basis for disturbing the verdict because the preclusion did not prejudice Thompson.

We conclude the trial court did not abuse its discretion in precluding the Dodge testimony under Pa.R.E. 702, and we discern no prejudice to Thompson by virtue of that preclusion. Thompson's first issue fails for lack of merit.

In her second issue, Thompson asserts the trial court abused its discretion by sustaining an objection to her counsel's question directed to witness Valerie Lockett-Slupski. Ms. Lockett-Slupski rode to the Mall on the same bus as Thompson on the day Thompson fell and testified that she had taken the same EMTA bus to the Mall for several years prior to the day of Thompson's fall. Counsel asked the witness how often in the past the bus stop sidewalk was cleared of ice and snow when the bus arrived at the Mall.

At that point, Mall counsel objected on the basis of relevance, arguing the only relevant day was the day of Thompson's fall. Thompson's counsel countered that the testimony was relevant in light of earlier testimony about when and why Mall employees cleared or did not clear the bus stop area. The trial court sustained the objection, noting, "[T]he question is what happened on this day and why. I think the defense has the better of this objection. Close call, but I'm going to sustain it." Notes of Testimony, 5/8/18, at 20.[5]

In its Rule 1925(a) opinion, the trial court looked to Pennsylvania Rule of Evidence 402, which provides that "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. The court acknowledged that "[e]vidence is relevant if it tends to prove or disprove a material fact." Trial Court Opinion, 9/14/18, at 10 (citing **Conroy v. Rosenwald**, 940 A.2d 409, 417 (Pa. Super. 2007)). **See also** Pa.R.E. Rule 401 ("Relevant evidence" means evidence having "any tendency to make a fact more or less probable than it would be

---

[5] We note the trial court similarly sustained Thompson's objection to a question about other slip and fall incidents posed to the Mall's maintenance superintendent by Mall counsel. Notes of Testimony, 5/8/18, at 54. Following a second similar objection and a sidebar conference, the judge advised the jury, "Ladies and gentlemen, there's been an objection that I've sustained. You're not here to pass judgment on whether the mall is a generally safe place or not. We're not going to look to see if there's been other accidents ever, those are all not admissible in this trial. So, since we're not looking at that we're not going to hear testimony about whether it's safe or not. We're looking at what happened on this day, that's what this case is about, nothing more and nothing less." **Id.** at 55-56.

without the evidence and . . . the fact is of consequence in determining the action.").

The trial court observed:

The material fact in question in this case was whether the Mall was negligent with respect to [Thompson] on the day of the accident, not whether the Mall had been negligent in removing snow and ice at other times and dates. Whether Ms. Lockett-Slupski had observed the bus stop[] cleared in years past was clearly irrelevant to [Thompson's] fall.

*Id.* at 11.

We find no abuse of discretion in the trial court's determination. We also note that testimony elicited by Thompson's counsel from Mall maintenance employees established their pattern of snow and ice removal from the Mall's sidewalks beginning after 7:00 a.m. and following a route that began on the opposite side of the Mall. As the Mall conceded, "At no place in the trial did the Mall take the position that the bus stop at which Ms. Thompson fell was shoveled or treated before 8:00, on the day of the accident or on any other day." Appellee's Brief at 20. While the trial court correctly observed that the actions taken—or not taken—on the day of Thompson's fall were at issue, testimony from Ms. Lockett-Slupski that she had never seen the area cleared when her bus arrived at the bus stop at 7:50 a.m. would have simply confirmed the testimony offered by Mall employees. Thompson has failed to demonstrate that the trial court abused its discretion in sustaining the Mall's objection and has failed to establish that she was in any way prejudiced by the ruling. Thompson's second issue fails.

In her third issue, Thompson contends the trial court erred in its jury instructions relating to the hills and ridges doctrine and exceptions to that doctrine. As this Court recently reiterated, the doctrine of hills and ridges is "a long standing and well entrenched legal principle that protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." *Collins v. Philadelphia Suburban Development Corporation*, 179 A.3d 69, 72 (Pa. Super. 2018) (quoting *Biernacki v. Presque Isle Condominium Unit Owners Ass'n, Inc.*, 828 A.2d 1114, 1116 (Pa. Super. 2003) (citation omitted)).

As a challenge to jury instructions,

[o]ur standard of review . . . is limited to determining whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case. Error in a charge occurs when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. Conversely, a jury instruction will be upheld if it accurately reflects the law and is sufficient to guide the jury in its deliberations.

The proper test is not whether certain portions or isolated excerpts taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.

In other words, there is no right to have any particular form of instruction given; it is enough that the charge clearly and accurately explains the relevant law.

***Pledger by Pledger v. Jannsen Pharmaceuticals, Inc.***, 198 A.3d 1126, 1146 (Pa. Super. 2018) (quoting ***James v. Albert Einstein Med. Ctr.***, 170 A.3d 1156, 1163-64 (Pa. Super. 2017) (additional citation omitted)).

Thompson argues the hills and ridges instruction delivered by the trial court at the close of evidence was unsupported by the record. She further contends the trial court's supplemental instruction was an inaccurate statement of law. We consider these assertions separately.

Again, under the hills and ridges doctrine, an owner of land is protected from liability for "generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." ***Collins***, 179 A.3d at 72 (citations omitted). However, "proof of hills and ridges is not required when the hazard is not the result of a general slippery condition prevailing in the community, but of a localized patch of ice." ***Harmotta v. Bender***, 601 A.2d 837, 842 (Pa. Super. 1992) (citing, *inter alia*, ***Tonik v. Apex Garages, Inc.***, 275 A.2d 296, 298 (Pa. 1971)).

Thompson first complains that a hills and ridges instruction was not warranted under the facts of the case. The parties stipulated to weather statistics from the Erie Airport Official Weather Station reflecting the precipitation, including light snow and heavy drizzle, that fell on the day before and morning of Thompson's fall, as well as the temperatures recorded during that period. Stipulation, 5/7/18, at ¶¶ 1-7. In addition, the Mall's incident

report admitted as an exhibit reflected "icy" conditions at the time of the incident. Thompson Trial Exhibit 25. Thompson's witnesses also testified regarding their own observations of conditions on the morning of Thompson's fall, with varying descriptions of icy conditions, "bumpy" ice, snow, clear pavement, and the existence of four or five icy spots, a few inches in diameter, in the otherwise clear area around the bus stop. *See, e.g.*, Deposition of Susan Chismar, 5/30/14, at 10-13, 22;[6] and Notes of Testimony, 5/8/18, at 17-24. Thompson herself acknowledged generally cold temperatures and light snow on the morning she fell, as well as smooth black ice on the bus stop sidewalk. Notes of Testimony, 5/9/18, at 6-7, 24-25.

The trial court delivered instructions that included duties owed to an invitee, the hills and ridges doctrine, and exceptions to the hills and ridges doctrine "where ice is localized and generally slipping (*sic*) conditions do not prevail throughout the community." Jury Instructions, 5/9/18, at 152-61 (quotation at 159). The court explained:

> [I]n light of the fact that there had been testimony about snow both the day before and at the time of the accident, as well as evidence of generally slippery conditions caused by a light drizzle the night before the accident and freezing temperatures, thereafter, the court declined to remove this issue from the jury.

Trial Court Opinion, 9/14/18, at 14. Although we have highlighted certain aspects of the jury instructions in light of Thompson's contentions, when we

---

[6] The Chismar deposition testimony was read to the jury and was admitted as Thompson Exhibit 33.

look to the charge in its entirety—as we are required to do—against the background of the evidence, we conclude the charge accurately reflected the law and was sufficient to guide the jury in its deliberations. **See Pledger**, 198 A.3d 1146. Therefore, we find the trial court did not abuse its discretion or commit error of law in the instructions delivered before the jury began its deliberations.

Thompson also complains that the trial court provided legally inaccurate supplemental instructions in response to a question from the jurors. Prior to delivering supplemental instructions, the trial judge met with counsel and explained that he would provide an oral instruction as well as a written instruction. The written instruction would include the standard jury instructions regarding an owner's duty to an invitee (SSJI 18.40) and regarding hills and ridges (SSJI 18.90), along with the exceptions to the doctrine.[7] Explaining the exceptions to the jury, the trial indicated the doctrine does not apply "where the ice is localized and there are no generally slippery conditions in the community," or "when the icy condition is caused by the Defendant's neglect or by human intervention, prior attempts at removal." Notes of Testimony (Jury Instructions), 5/9/18, at 181. The trial judge then

---

[7] We recognize "[t]he Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial judges in crafting jury instructions; rather, '[a]s their title suggests, the instructions are guides only.'" **Commonwealth v. Simpson**, 66 A.3d 254, 274 n.24 (Pa. 2013) (quoting **Butler v. Kiwi, S.A.**, 604 A.2d 270, 273 (Pa. Super. 1992)).

provided a written version of the instructions and explained that he had "shown [it] to the lawyers, I've got their approval of the written instructions." *Id.* at 183.

The trial court considered Thompson's issue waived in light of counsel's agreement to the proposed written supplemental instruction. As the court noted, counsel was provided the opportunity to review and object to the written instructions before they were submitted to the jury and failed to object, essentially contending he read the instructions too quickly and failed to notice any inaccuracy. The objection was first raised in the motion for post-trial relief and "was too late for the trial court to effectively correct any error in the jury instructions." Trial Court Opinion, 9/14/18, at 15. We agree. "[O]ur courts have made clear that an appellant must make a timely and specific objection to a jury instruction to preserve for review a claim that the jury charge was legally or factually flawed." *Stumpf v. Nye*, 950 A.2d 1032, 1041 (Pa. Super. 2008) (citations and quotation marks omitted). However, even if not waived, the issue would fail for lack of merit.

Again, we look at the entirety of the charge. When examining the particular part of the instruction forming the basis of Thompson's challenge, we see, as the trial court observed, that the written instruction "was essentially cut and pasted from SSJI 18.90. The last three sentences, to which [Thompson] objects, are directly taken from the last Subcommittee note attached to SSJI 18.90 entitled 'Exceptions.'" *Id.* The court continued,

explaining that the deviations from the text of the standard jury instructions included substituting the phrase, "rule covering snow and ice," for the technical but potentially confusing term, "hills and ridges doctrine." *Id.* at 15-16. Quoting the language from both the oral and the written supplemental instructions, the court included its statements about "generally slippery conditions in the community" and the exception "where ice is localized and there are no general slippery conditions in the community." *Id.* at 16-18.

Thompson takes exception to the court's use of language such as "no general slippery conditions" when "the evidence only needs to show that general slippery conditions **were not prevailing** in the community." Appellant's Brief at 58 (emphasis in original) (citing *Tonik*, 275 A.2d at 298). Again, this Court reviews the charge in its entirety, cognizant there is no right to have any particular form or precise wording given. *See Pledger, supra*. We cannot see that the lack of the specific word "prevailing" renders the charge inaccurate.[8] Moreover, looking that the charge in its entirety, the "prevailing in the community" language was in fact included in the trial court's initial charge. Notes of Testimony, 5/8/18, at 159.

We find no abuse of discretion or error of law with respect to the court's original jury instructions. Further, even if not waived, we discern no abuse of

---

[8] Thompson does not suggest or offer any citation suggesting that "prevailing" is a legal term.

- 18 -

discretion or error of law in its supplemental instructions. Thompson's third issue fails.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2019