J-S50045-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: T.M.W. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: K.R., NATURAL MOTHER | : | |
| | : | |
| | : | No. 902 WDA 2019 |

Appeal from the Order Entered May 10, 2019
In the Court of Common Pleas of Clearfield County Orphans' Court at
No(s):  No. 3438-2017

| | | |
|---|---|---|
| IN RE: K.W. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: K.R., NATURAL MOTHER | : | |
| | : | |
| | : | No. 903 WDA 2019 |

Appeal from the Order Entered May 10, 2019
In the Court of Common Pleas of Clearfield County Orphans' Court at
No(s):  3439-2017

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                         FILED OCTOBER 11, 2019

Appellant, K.R. (Mother), appeals from the orders entered May 10, 2019 that involuntarily terminated her parental rights to her children, T.M.W., born 2010, and K.W., born 2013 (collectively, Children), pursuant to the Adoption

_____

* Retired Senior Judge assigned to the Superior Court.

Act.[1]  We vacate both orders and remand for further proceedings consistent with this decision.

> This Court previously summarized the history of this matter as follows:
>
> Mother has a lengthy history of involvement with Clearfield County Children, Youth and Family Services (the Agency) dating back to 2000.  N.T., 1/5/2018, at 48.  The Agency became involved with Mother most recently due to truancy issues involving Children's older sister, N.H., and due to poor living conditions in the family's home.  Id. at 58, 62.  On February 10, 2016, Mother tested positive for amphetamines and methamphetamines.  Id.  She signed a voluntary placement agreement on February 11, 2016, and Children have remained in foster care since that time.  Id. at 58-60.  The juvenile court adjudicated Children dependent on March 9, 2016, and changed their permanent placement goals from reunification to adoption on August 19, 2016.  Id. at 59-61.
>
> On September 20, 2017, the Agency filed petitions to terminate Mother's parental rights to Children involuntarily.  The orphans' court conducted a hearing on January 5, 2018, during which both Children were represented by legal counsel, Joshua S. Maines, Esquire, and a guardian ad litem, Daniel C. Bell, Esquire.

In re T.M.W., No. 397 WDA 2018, unpublished memorandum at 1-2 (Pa. Super. filed Sept. 6, 2018).  Following the hearing, the orphans' court entered an order on February 12, 2018 terminating Mother's parental rights to Children.  In its opinion in support of that order, the orphans' court concluded that grounds for the termination of Mother's parental rights over Children exist under Section 2511(a) (1), (2), (5), and (8) and Section 2511(b) of the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), (b).  Orphans' Court Opinion, 3/14/18, at 6-11.

_____

[1] 23 Pa.C.S. §§ 2101-2938.

Mother filed a timely appeal of the February 12, 2018 order. In its September 6, 2018 memorandum decision, this Court vacated the order of February 12, 2018. T.M.W., No. 397 WDA 2018, unpublished memorandum at 1.

We first raised sua sponte the issue of whether Attorney Maines, Children's appointed legal counsel, adequately represented their interests in the termination proceeding.[2] Concluding that the record did not reveal any evidence that Attorney Maines had attempted to ascertain Children's preferred outcomes regarding the potential termination of Mother's parental rights or advise the orphans' court of Children's preferences, we remanded for Attorney Maines to interview Children, determine their preferred outcomes, and then communicate this information to the orphans' court. Id. at 5-7, 10-11.

In addition, this Court found that "the [A]gency failed to set forth evidence bearing on all of the needs and welfare factors, resulting in an erroneous needs and welfare analysis by the orphans' court." Id. at 10. In particular, this Court noted that the only evidence presented by the Agency concerning Children's relationship with Mother was the testimony of an Agency

---

[2] We based our authority to raise the adequacy of Children's legal representation sua sponte on In re Adoption of T.M.L.M., 184 A.3d 585 (Pa. Super. 2018). In In re Adoption of K.M.G., ___ A.3d ___, 2019 PA Super 281 (filed Sept. 13, 2019) (en banc), an en banc panel of this Court overruled T.M.L.M., holding "that the Superior Court only has the authority to raise sua sponte the issue of whether the lower court appointed any counsel for the child, and not the authority to delve into the quality of the representation." Id. at *5 (emphasis in original).

caseworker that, during supervised visits occurring between April 2016 and February 2017, Mother was "more of a friend to [C]hildren than a parent" and that Children's behavior deteriorated considerably during the period when the visitation was permitted. Id. at 8-9 (citing N.T., 1/5/18, at 67-68, 70). The Agency also presented the testimony of a Children's Aid Society employee who stated that Mother would not engage with Children during these visits until they approached her first. Id. at 9 (citing N.T., 1/5/18, at 105). We likewise found the orphans' court's Section 2511(b) analysis deficient because the court did not include any discussion in its opinion regarding whether Children have a bond with Mother, the nature of that bond, or the effect on Children of severing the bond. Id. at 9-10.

Accordingly, we concluded that remand was also necessary to comply with Section 2511(b), stating that, on remand, "the Agency must present evidence addressing whether Children have a bond with Mother, the nature of that bond, and what effect severing that bond may have on Children." Id. at 12. In addition, we directed the orphans' court to "conduct a proper subsection 2511(b) analysis that includes a discussion all of the applicable considerations required by the statute and case law before granting or denying termination." Id.

The orphans' court conducted a remand hearing on March 27, 2019.[3] At the hearing, Attorney Maines testified that he met separately on three or four occasions with T.M.W., who was nearly nine years old at the date of the second hearing, and K.W., who had recently turned six years old, to discuss their preferred outcomes. N.T., 3/27/19, at 5-6, 10. Attorney Maines testified that, while T.M.W., as the older child, expressed his desires in clearer terms, each child advised him that they knew who Mother was and they missed her, but they stated that they want to be with their respective foster parents and did not want Mother to be their parent anymore. Id. at 5-8.

Regarding the needs and welfare analysis of Section 2511(b), the Agency presented the testimony of Dr. Allen Ryen, an expert in child psychology, with a practice of over 40 years. N.T., 3/27/19, at 13-14. Dr. Ryen testified that, based on the fact that it had been over three years since their removal from Mother and the young age at the date of removal, they would at most have an insecure bond with Mother. Id. at 15, 19, 21. Dr. Ryen stated that he was more concerned with the prospect of disturbing the "presumably secured bonds" that Children had with their foster parents, and he "would assume [that Children's] needs are being met by the foster parents or they wouldn't be foster parents." Id. at 15-16.

_____

[3] Subsequent to the remand, the orphans' court entered orders on September 13, 2018 terminating the parental rights of Children's natural father pursuant to his voluntary consent.

However, Dr. Ryen did not perform a bonding assessment or meet with Children, the foster families, or Mother, and he instead based his testimony on information in a "very brief summary" he received from the Agency's counsel and the testimony of Attorney Maines regarding Children's preferred outcomes, id. at 14, 16-17, as the following testimony demonstrates:

Q      And you have not directly met with anybody involved in this case; is that correct?

A      To the best of my awareness, no. . . .

Q      Dr. Ryen, you would agree with me, and I believe you testified to this, that you never met [Mother]; right?

A      Not to my awareness.

Q      And you've never met the children . . . at issue?

A      No, I've not met the children.

Q      Now, doctor, did you review the records in this case, or how did you become familiar with the facts of the case?

A      I did not review the records. . . .

Q      So your opinions today are based on your brief summary from the solicitor of children and youth?

A      Based on that and upon information that I have been subjected to this afternoon.

Q      So it would be safe to say, given you haven't met with them, that you've never undergone any type of bonding assessment between [Mother] and her children?

A      Correct.

Q      So with that being said, short of a bonding assessment, you never had the opportunity to observe [Mother] with the children?

A      True. . . .

[Q]   So never met them, never had that observation?

A    Also true.  Yes.

Q    Without being able to see and observe them, you really can't be sure whether there's a bond that exists between the children and [Mother].  Correct?

A    I can't be absolutely certain, but I can certainly take some educated guesses.

Q    Sure.  And your testimony today is basically hypothetical, speculative testimony based upon your experiences?

A    Correct.

Id.

Crystal Vicklund, the Agency caseworker, also testified at the remand hearing that Mother is currently incarcerated, id. at 30-31, but did not provide testimony regarding Children's bond with Mother or their bonds with their current foster parents.

The orphans' court did not make any findings of fact or state any legal analysis at the conclusion of the remand hearing.

On May 10, 2019, the orphans' court entered orders terminating Mother's parental rights as to Children.  In the orders, the orphans' court found Attorney Maines's testimony credible that Children expressed a preference for the termination of Mother's parental rights and that Children had the benefit of counsel as required by the Adoption Act.  Order, No. 3438-2017, 5/10/19, ¶¶3-4; Order, No. 3439-2017, 5/10/19, ¶¶3-4.  The orphans' court's entire discussion pursuant to subsection 2511(b) consisted of one sentence:  "Dr. Ryen's credible testimony proved to the Court that there is no real emotional bond between Mother and the Children and that the best result for the Children would be to terminate Mother's parental rights so they may

be adopted." Order, No. 3438-2017, 5/10/19, ¶6; Order, No. 3439-2017, 5/10/19, ¶6. The orphans' court reaffirmed its conclusions announced in its earlier opinion and determined that the Agency had met its burden of proof in establishing grounds for termination under the Adoption Act. Order, No. 3438-2017, 5/10/19, ¶8; Order, No. 3439-2017, 5/10/19, ¶8. Mother filed timely appeals from the May 10, 2019 orders.[4]

On appeal, Mother presents the following issue:

> Whether the [orphans'] court abused its discretion in finding that [the Agency] met its burden of proof by clear and convincing evidence to show that the needs and welfare of the children would be advanced by a termination of parental rights pursuant to 23 Pa.C.S. § 2511(b)?

Mother's Brief at 7.

Mother contends that the Agency did not comply with this Court's instruction on remand that it present evidence on the issue of whether there is a bond between Children and Mother, the nature of the bond, and the effect on Children of severing the bond. Mother argues that Dr. Ryen's testimony was not sufficient to meet the Agency's burden under Section 2511(b) because he "had no first-hand knowledge of the case and therefore his testimony was all speculation and conjecture," Mother's Brief at 14, and that the Agency did

---

[4] Mother filed concise statements of errors complained of on appeal with her notices of appeal as required by Pa.R.A.P. 1925(a)(2)(i). On June 18, 2019, the orphans' court notified this Court that it would not file a further opinion in these matters. On July 3, 2019, this Court entered a per curiam order sua sponte consolidating the two appeals.

not offer any additional evidence at the remand hearing regarding Children's bond with Mother.

Our standard of review of a decree terminating parental rights is limited to determining whether the orphans' court abused its discretion, committed an error of law, and whether its decision is supported by competent evidence. *In re B.J.Z.*, 207 A.3d 914, 921 (Pa. Super. 2019). The petitioner bears the burden of demonstrating grounds for termination by clear and convincing evidence, which "is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted).

Under Section 2511 of the Adoption Act, a court must engage in a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*Id.* (citation omitted). Our Supreme Court has instructed that "the determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child [with] utmost attention [to] be paid to discerning the effect on the child of permanently severing the parental

bond." In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (citation and internal quotation marks omitted).

An agency petitioning for the termination of parental rights may rely on expert testimony to satisfy its burden under Section 2511(b); however, "expert testimony is incompetent if it lacks an adequate basis in fact." Helpin v. Trustees of University of Pennsylvania, 969 A.2d 601, 617 (Pa. Super. 2009) aff'd, 10 A.3d 267 (Pa. 2010).

> Admissible expert testimony that reflects the application of expertise requires more than simply having an expert offer lay opinion. . . . Likewise, expert testimony must be must be based on more than mere personal belief, and must be supported by reference to facts, testimony or empirical data. . . . [P]roffered expert testimony must point to, rely on or cite some scientific authority . . . that the expert has applied to the facts at hand[.]

Nobles v. Staples, Inc., 150 A.3d 110, 114-15 (Pa. Super. 2016) (emphasis added; citation and quotation marks omitted). "No matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture." Collins v. Hand, 246 A.2d 398, 404 (Pa. 1968); see also Helpin, 969 A.2d at 617.

Upon review, we agree with Mother that Dr. Ryen's testimony regarding the bond between Children and Mother was based on conjecture and speculation without an adequate basis in fact. Collins, 246 A.2d at 404. Dr. Ryen testified that the sole factual basis for his opinion was a "very brief summary" of the case provided by the Agency's counsel and listening to Attorney Maines' testimony during the remand hearing regarding his conversations with Children. N.T., 3/27/19, at 16-17. On cross-examination,

Dr. Ryen admitted that his testimony was "basically hypothetical [and] speculative" and "educated guesses" based on his history as a child psychologist. Id. at 17. Indeed, Dr. Ryen appeared to formulate his opinions regarding the bond entirely on two pieces of information: the age at which Children were removed from their home with Mother and the length of time since that removal. While we do not doubt Dr. Ryen's expertise and experience, he must base his testimony "on more than mere personal belief" and must still apply his expertise "to the facts at hand," Nobles, 150 A.3d at 114-15, and we do not accept that a psychologist's testimony regarding such an intimate topic as a bond between a parent and child can stand on such a flimsy factual foundation.

Dr. Ryen additionally offered his opinion that Children would be harmed by being removed from their foster parents; however, Dr. Ryen's testimony was based only on the "presumably secured bonds" between Children. N.T., 3/27/19, at 15-16, 18 (emphasis added). Dr. Ryen did not explain any facts upon which his opinion regarding these presumably secure bonds were based, such as how long Children had been with their foster parents or whether permanency goals were currently in place, and Dr. Ryen admitted on cross-examination that he was not aware that K.W. had been removed from his foster home in November 2018. Id. at 18. Instead, Dr. Ryen's testimony was based on assumptions: as he explained, "I would assume [that Children's] needs are being met by the foster parents or they wouldn't be foster parents." Id. at 15.

Accordingly, we conclude that Dr. Ryen's testimony did not satisfy our instructions on remand set forth in our September 6, 2018 decision and as mandated by precedent that the Agency present evidence regarding the bond between Children and Moher, the nature of that bond, and the effect of severing that bond. Because the Agency did not offer any additional evidence at the remand hearing regarding Children's bond with Mother, the orphans' court erred in concluding that Agency met its burden of satisfying Section 2511(b) by clear and convincing evidence. We are therefore compelled to vacate both orders dated May 10, 2019, and to remand for further proceedings to allow the Agency to comply with Section 2511(b). See, e.g., In re C.P., 901 A.2d 516, 520-23 (Pa. Super. 2006) (remanding to allow agency to present further evidence regarding parent-child bond where testimony of psychologist and social worker did not sufficiently address what degree of bond existed and the effect of severing the bond).

On remand, we direct the orphans' court to conduct an additional hearing in these matters within 45 days of the date of receipt of this decision. At the hearing, the Agency must present evidence concerning whether a bond exists between Children and Mother, the nature of the bond, and the effect on Children of severing the bond. We note that the Agency is not required to retain an expert to perform a formal bonding analysis of Mother and Children. In re J.N.M., 177 A.3d 937, 944 (Pa. Super. 2018). As this Court has observed, "[w]hile it may be wise to conduct a bonding evaluation where there is evidence of a bond, in other cases direct observation of the interaction

between the parent and the child is not necessary and may even be detrimental to the child." Id. at 944-45 (citation and quotation marks omitted). Furthermore, the Agency is "free to rely upon the assessments of social workers and caseworkers" to demonstrate the presence or absence of a bond. Id. at 945.

In addition to evidence related to the bond between Mother and Children, the Agency may present evidence relevant to other factors related to the needs and welfare of Children. As this Court has explained, in conducting a Section 2511(b) analysis, the orphans' court "can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." In re G.M.S., 193 A.3d 395, 401 (Pa. Super. 2018) (citation omitted). The court may also "consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child." Id. (citation omitted). The other parties to the termination proceedings may present evidence supporting or rebutting the Agency's evidence if they so choose.

The orphans' court shall issue orders and an accompanying opinion stating its findings of fact and conclusions of law regarding the Section 2511(b) analysis within 15 days of the date of the remand hearing. We remind the orphans' court that the needs and welfare analysis is not a mere formality and that a one-sentence, conclusory finding that termination is proper under Section 2511(b) is insufficient and would be a blatant disregard of this Court's

instructions. See C.P., 901 A.2d at 522; In re Adoption of A.C.H., 803 A.2d 224, 229-30 (Pa. Super. 2002); see also T.M.W., No. 397 WDA 2018, unpublished memorandum at 12 (this Court's instructions pursuant to earlier remand). Accordingly, in its opinion, the orphans' court shall address the bond between Children and Mother, the nature of the bond, the effect of severing any bond that remains, and such other Section 2511(b) factors as are relevant.[5]

In remanding this matter to the orphans' court a second time, we are mindful of our Supreme Court's admonition that, when engaging in a needs and welfare analysis under Section 2511(b) analysis, "courts must keep the ticking clock of child ever in mind . . . and we have an obligation to see to their healthy development quickly." T.S.M., 71 A.3d at 269. Nevertheless, "[w]e recognize that the complete and irrevocable termination of parental rights is one of the most serious and severe steps a court can take, carrying with it great emotional impact for the parent and the child." C.P., 901 A.2d at 519-20. We therefore may not sacrifice the strict requirements of the Adoption Act, as crafted by our legislature, and our precedent in an effort to effect the prompt resolution of this matter.

_____

[5] We also note that, as Children's advocate stated that Children knew who Mother was and missed her, N.T., 3/27/2019, at 6, 8, this case is not one "where there is no evidence of any bond between the parent and child[ren,]" and thus it would not be "reasonable to infer that no bond exists." In re Q.R.D., 214 A.3d 233, 243 (Pa. Super. 2019) (citation omitted).

Finally, we note that, notwithstanding the vacatur of the May 10, 2019 orders, we leave undisturbed the earlier orders finding Children dependent and placing Children in foster care. It is in the best interests of Children to maintain the status quo while the orphans' court acts on remand. Children therefore shall not be returned to Mother during the period that the orphans' court resolves the issues pursuant to our remand.

Orders vacated. Case remanded for further proceedings consistent with this decision. Panel jurisdiction retained.