J-S11035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| B.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.G. | : | No. 1012 WDA 2020 |

Appeal from the Order Entered August 28, 2020
In the Court of Common Pleas of Butler County Civil Division at No(s):
F.C. No. 17-90802-C

BEFORE:   STABILE, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                     **FILED: APRIL 14, 2021**

Appellant, B.G. ("Father"), appeals from the custody order entered August 28, 2020.  Appellee, S.G. ("Mother"), has filed a motion to quash Father's appeal.  After careful review, we affirm the custody order and deny Mother's motion to quash.

In its opinions, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  **See** Trial Court Opinion ("TCO"), dated August 28, 2020, at 1-17; TCO, dated December 18, 2020, at 1-18. Therefore, we have no reason to restate them at length here.

For the convenience of the reader, we briefly note:

Mother and Father met when Mother was still in high school. Father was eight years older than Mother.  Mother and Father began dating shortly after meeting.  At some point, Mother and

_____

[*] Retired Senior Judge assigned to the Superior Court.

> Father signed a common law marriage document so that Mother could be added to Father's health insurance. Mother and Father married on September 26, 2003.

TCO, dated August 28, 2020, at 1. The parties had two biological children, P.G., born in 2006, and G.G., born in 2011 (collectively, "Children"). The parties divorced and executed a martial settlement agreement on November 28, 2017, which included a custody arrangement. On September 10, 2019, Mother filed a complaint for modification of custody. The parties attended a custody conciliation on December 2, 2019 and underwent custody evaluations with Dr. Eric Bernstein, who recommended that Mother have primary physical custody of Children, with Father having partial weekend custody.

The trial court held a three-day trial on July 20 and 21 and August 14, 2020. At the trial,

> Mother testified that when she and Father were married, Father was scary and loud when he was mad. She stated that she never knew when he was going to get mad and she tried to avoid making him angry. She testified that he had ripped a door off its hinges, threw things, and punched holes in the doors.

TCO, dated December 18, 2020, at 3.

On August 28, 2020, the trial court entered an order[1] granting sole legal custody and primary physical custody of Children to Mother. Father's periods of physical custody are as follows:

> During the school year, Father shall exercise custody of Children every other weekend from Friday at 6:00 p.m. until Sunday at

---

[1] The order was accompanied by a memorandum opinion.

6:00 p.m.  On the off week, Father shall have custody of Children on Wednesday night from 5:00 p.m. until 7:00 p.m.

During the summer, Father shall exercise custody of Children three out of every four weekend.

Order, 8/28/2020.

Mother was also ordered to enroll in individual counseling. Children were additionally Ordered to enroll in counseling and Mother and Children were to enroll in family therapy.  Father was not ordered to enroll in therapy, as he seemed unwilling at trial to participate and any indication that he would participate was [found] not credible [by the trial court].  However, th[e trial c]ourt encouraged Father to attend individual counseling of his own volition.

TCO, dated December 18, 2020, at 1-2.

On September 25, 2020, Father filed his notice of appeal and statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[2]  On February 19, 2021, Mother filed a motion to quash Father's appeal, asserting that Father's appellate brief was materially defective in several respects, including that Father failed to serve Mother with the brief contemporaneously to when he filed it with this Court.  Father responded that he properly served Mother when his counsel e-mailed the brief to Mother's counsel.  As Mother was able to file a complete, comprehensive brief with this Court, we find that she was not prejudiced by any alleged defects with Father's brief and that our ability to review has not been substantially hampered by any potential

_____

[2] On December 18, 2020, the trial court entered an opinion pursuant to Pa.R.A.P. 1925(a).

- 3 -

procedural errors; accordingly, we decline to quash Father's appeal. ***See***

***Fulano v. Fanjul Corp.***, 236 A.3d 1, 12 (Pa. Super. 2020) (under Pa.R.A.P.

2101, even when the defects in an appellate filing an substantial, "quashing

an appeal is not mandatory[,]" especially where our review "is not

substantially hampered" by the failure to conform to the Rules of Appellate

Procedure).[3]

Father now presents the following issues for our review:

1. Whether the trial court erred in finding Mother's testimony to be credible and Father not credible when there were contradictory statements in Mother's testimony.

[2.] Whether the trial court erred in concluding that Mother be granted primary custody of [C]hildren when many of the custody factors[4] did not weigh in favor of one party over another.

---

[3] On February 25, 2021, Father filed a motion to strike Mother's appellate brief, which this Court denied on March 2, 2021.

[4] In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

- 4 -

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

[3.]  Whether the trial court erred in ordering a custody schedule wherein Father's custodial time was decreased from a shared every-other-week to every-other-weekend, when both Mother and the expert testified that there is no schedule that would resolve Mother and Father's inability to communicate and co-parent.

4.  Whether the trial court erred in concluding that [C]hildren were not at risk of harm in Mother's custody when testimony revealed that during the summer, Mother left [C]hildren unsupervised when she left for work and all day while she was working.

5.  Whether the trial court erred in reaching a conclusion that stripped Father of all legal custody and the majority of physical custody time when Father testified at trial that he was willing to actively participate in counseling.

Father's Brief at 9 (issues re-ordered to facility disposition).

"In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion."  **D.K. v. S.P.K.**, 102 A.3d 467, 478 (Pa. Super. 2014) (quoting **J.R.M. v. J.E.A.**, 33 A.3d 647, 650 (Pa. Super. 2011)).

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

**Nobles v. Staples, Inc.**, 150 A.3d 110, 113 (Pa. Super. 2016) (citations and internal quotation marks omitted).  Additionally, when reviewing a custody order:

---

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**D.K.**, 102 A.3d at 478 (quoting **J.R.M.**, 33 A.3d at 650).

Preliminarily, we observe that Father repeatedly requests that this Court ignore its scope and standard of review. Although the trial court "found Mother to be credible and forthright during her testimony[,]" TCO, dated December 18, 2020, at 27, Father's first claim is that "[t]he trial court erred in finding Mother's testimony to be credible . . . when there were contradictory statements in Mother's testimony." Father's Brief at 29. In doing so, he is asking this Court to disregard the credibility and factual findings of the trial court and to make independent factual determinations, which we cannot and will not do. **D.K.**, 102 A.3d at 478.

We further note that Father seems to equate Mother's trial testimony that she did not recall or remember what she reported about Father's behavior in the past with being "contradictory" to those prior statements, **see, e.g.,** Father's Brief at 30-31, which is not necessarily true -- Mother could have had genuine lapses in memory about what she said in the past about him, without stating anything in opposition to her earlier statements. Again, such

determinations are the prerogative of the trial court, as fact-finder.[5] **D.K.**, 102 A.3d at 478.[6]

Next, Father broadly asserts that "[t]he trial court erred in concluding that Mother be granted primary custody of [C]hildren when many of the custody factors did not weigh in favor of one party over another." Father's Brief at 36. As for Father's more specific claims, he argues that --

> [t]he trial court erred in ordering a custody schedule wherein Father's custodial time was decreased from a shared every-other-week to every-other-weekend, when both Mother and the expert testified that there is no schedule that would resolve Mother and Father's inability to communicate and co-parent.

**Id.** at 32.[7] After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Kelley T.D. Streib, we conclude Father's challenge merits no relief. The trial

_____

[5] The trial court found that, "[i]f, in fact, there were any contradictory statements [by Mother] the[y] were de minimis." TCO, dated December 18, 2020, at 27.

[6] Although Father also baldly alleges that "[t]he trial court erred in finding . . . Father not credible[,]" Father's Brief at 9, 29, he fails to develop any argument about his own credibility, instead choosing to focus entirely on attacking Mother's veracity. **See id.** at 29-32. By failing to develop any argument, this issue is waived. **Commonwealth v. Spotz**, 18 A.3d 244, 281 n.21 (Pa. 2011) (without a "developed, reasoned, supported, or even intelligible argument[, t]he matter is waived for lack of development"); **Kelly v. Carman Corp.**, 229 A.3d 634, 656 (Pa. Super. 2020) (citations omitted). Assuming it were not waived, we would find it meritless on the basis of the analysis in the trial court's Rule 1925(a) opinion. TCO, dated December 18, 2020, at 27-29.

[7] This challenge is related to the first custody factor, "[w]hich party is more likely to encourage and permit frequent and continuing contact between the child and another party." 23 Pa.C.S. § 5328(a)(1).

court comprehensively discussed the parties' communication issues. In its

memorandum accompanying the custody order, the trial court wrote:

> Mother and Father are incapable of communicating with each other. Both parties are responsible for involving the Children in the issues that they have with each other, however it appears that Father has purposefully taken actions that lead to alienation between the Children and Mother. G.G.'s behavioral problems have gotten so bad that G.G. is beginning to reject anyone he views as tied to Mother. P.G. and Mother testified that they believed the reason G.G. rejects Maternal Grandmother and Mother's Boyfriend is because of what Father is saying to G.G. Regardless, it is clear that G.G. is under enormous stress and tries to please his Father.
>
> Because of the parties' inability to effectively communicate with each other and Father's desires to communicate less with Mother and not be in close proximity with Mother, shared custody is not a viable option at this time. Dr. Bernstein opined that if Father were given primary custody of Children, Mother's position would be marginalized in caring for Children. Father has told Mother that he would never co-parent with her and wanted the opposite of whatever she wanted. Father testified that Children have daily contact with Mother and that he makes them call her. Contrary to that testimony, Mother and Children indicated that they do not have much contact when Children are in Father's custody.
>
> Father is unlikely to encourage and permit frequent and continuing contact with Children and Mother. Therefore, this factor weighs in favor of Mother having primary custody.

TCO, dated August 28, 2020, at 19. In its Rule 1925(a) opinion, the trial court

further explained:

> Dr. Bernstein gave thorough recommendations and he recommend[ed] that Mother have primary physical custody of Children with Father having partial weekend custody. Additionally, Dr. Bernstein recommended that all communication occur through Our Family Wizard[8] and that Mother and Father undergo counseling with a therapist that has professional training

---

[8] "Our Family Wizard" is a custody and co-parenting web site and app.

in domestic violence and understands the need for safety, while prioritizing boundaries and enforcement of boundaries. He also recommended that Children participate in individual therapy and Mother participate in individual therapy, focusing on increased confidence, self-esteem, self-worth, and self-awareness and creating and enforcing boundaries; Dr. Bernstein noted that while co-parenting was a goal, it was unlikely to work at this time with the level of conflict in this case. He also indicated that ideally, the custody exchanges would occur at the parties' homes, but because of the behaviors and the "he said, she said," a police station is safer for all parties involved. He recommended that P.G. and G.G. not be separated with different custody orders because the sibling bond is the one stable bond that Children have. . . .

Father mischaracterizes Dr. Bernstein's testimony. While it may be true that no custody schedule would "resolve" Mother's and Father'[s] inability to communicate or co-parent, resolving parental conflict is not the purpose of a custody schedule. The [c]ourt must consider the best interest of Children. Unfortunately, this high-conflict custody case requires the parties to seek individual therapy to resolve the underlying issues which shapes their inability to communicate and co-parent[.]

The totality of Dr. Bernstein's testimony and opinion was that if Father were given primary custody, Mother's position as a parent would be marginalized. Thus, he further opined that Mother should have primary physical custody. . . .

Father's hostilities toward Mother have not only made their ability to co-parent nonexistent, but it is also harming Children. Father is hostile toward Mother and all related to Mother, and he is unlikely and frankly unwilling to encourage any continuing contact between Children and Mother. He undermines Children's relationship with Mother at every turn, which is harmful to Children. Thus, a decreased amount of parenting time was necessary and in Children's best interest.

TCO, dated December 18, 2020, at 30-31. Given the trial court's well-reasoned, comprehensive analysis based on the evidence of record, we find no abuse of discretion. *D.K.*, 102 A.3d at 478.

Father next urges this Court to find that "[t]he trial court erred in concluding that [C]hildren were not at risk of harm in Mother's custody when testimony revealed that during the summer, Mother left [C]hildren unsupervised when she left for work and all day while she was working." Father's Brief at 39.  He continues that Mother "leaves for work very early in the morning, leaving [P.G.] with the task of taking care of herself and [G.G.]" *Id.*  He maintains that, by contrast, "[d]uring [his] custodial time, he is available and able to meet all of the physical, emotional, and financial needs of the children, including, but not limited to, taking care of preparing meals, entertaining [C]hildren, attending extracurricular functions,[9] cleaning the house, and assisting with homework." *Id.*

Pursuant to our review of the record, we find that the trial court acknowledged these concerns with Mother's supervision of and ability to care for Children.  The trial court emphasized in its Rule 1925(a) opinion that it "did not find that Children were safe while left alone in Mother's custody." TCO, dated December 18, 2020, at 32.  As it wrote in its memorandum opinion:

> Both parents are available or make child-care arrangements.  Both parents leave Children alone for periods of time; however, during Father's custody time, he is more cognizant that Children are not

---

9 As discussed below, Father refuses to attend Children's extracurricular activities if Mother is going to be present.  TCO, dated August 28, 2020, at 20.

- 11 -

left alone for long periods of time. During Mother's custody time, she is more apt to leave Children alone and let them contact Maternal Grandmother if they need something. This causes some concern as P.G. should not be left to care for G.G. for eight or more hours at a time on a regular basis when Mother is working. Maternal Grandmother testified that she is willing to provide more supervision of Children when Children are in Mother's care.[10]

TCO, dated August 28, 2020, at 24. Consequently, the trial court was aware of and gave proper consideration to these concerns when it crafted its custody order. *Ergo*, its decision was not manifestly unreasonable, and we find no abuse of discretion. **Nobles**, 150 A.3d at 113; **D.K.**, 102 A.3d at 478.

Father additionally alleges "[t]he trial court erred in reaching a conclusion that stripped Father of all legal custody and the majority of physical custody time when Father testified at trial that he was willing to actively participate in counseling." Father's Brief at 40. Again, the trial court addressed the question of counseling:

> As for individual counseling as recommended by Dr. Bernstein, Father's open hostility and lack of insight causes th[e trial c]ourt to not order individual counseling for Father. Unless Father is open to different perspectives, counseling will be unfruitful. However, the [trial c]ourt strongly encourages Father to enroll in individual therapy for the well-being of Children, who are clearly hurting due to his behaviors. Without such counseling and credible changes in behavior, Father may never experience the parenting quality or time he claims to desire.

TCO, dated August 28, 2020, at 25-26. Again, the trial court considered this evidence but reached a different conclusion than what Father wanted.

---

[10] Maternal Grandmother already "oversees" Children; while she is not always present in their home, she is available next door. TCO, dated December 18, 2020, at 32. Maternal Grandfather also provides childcare approximately twice per month. **Id.**

Nevertheless, Father failed to demonstrate by any evidence of record, that the trial court's determination was based on partiality, prejudice, bias, or ill-will, and we hence decline to find that the trial court abused its discretion. **Nobles**, 150 A.3d at 113; **D.K.**, 102 A.3d at 478.

Father continues: "The trial court did not find that either parent was incapable of caring for the children, that there was any issue with the home of either parent or that either parent lacked concern for the children's well-being." Father's Brief at 36. Father's statement does not accurately reflect the record. Although the trial court found that both parents "do fun things with Children during their custody time," Father ignores that the trial court also found that "Mother has been providing most of the care for Children[,]" including "help[ing] Children with their homework" with "a lot of one-on-one time with G.G.[,]" making and taking Children to "dental, doctor, and therapy appointments" which "Father does not want . . . scheduled during his custody time[,]" and "attend[ing] all of the extra-curricular activities Children participate in." TCO, dated August 28, 2020, at 20. Furthermore, Father's brief disregards that he "refuses to attend [Children's extracurricular activities] if Mother is going to be present." **Id.** Finally, Father's assertion that he is capable of caring for Children is further called into doubt by the fact the he did not take G.G. to the hospital when the child suffered a seizure; Father chose "to go to a candy store instead" and "waited for Mother to take G.G. to the hospital[.]" **Id.**

- 13 -

Finally, beyond any individual custody factors, the trial court is required to "determine the best interest of the child[ren.]" 23 Pa.C.S. § 5328(a). After a thorough review of the record and the briefs of the parties, we conclude that the trial court did so. As the court comprehensively explained:

> Th[e c]ourt's concern in deciding the above matter is the best interests of the child. It is not a tally board, the [c]ourt considers all factors together to determine the best interest of Children. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child." *M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013) (citing *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011)). In weighing the factors, the [c]ourt was not concerned with whom came out on top, the [c]ourt is not keeping tally marks in a column, but rather, when taking the evidence as a whole, what custody arrangement would best serve the well-being of Children. Children are not happy, that much was apparent at trial. They are conflicted. They are distressed. The current custody arrangement is NOT in their best interest. Conflict between Mother and Father is NOT in their best interest[]. Alienating behavior by Father is NOT in their best interest. G.G. has very high anxiety and is emotionally withdrawn and depressed. G.G. has been subjected to pressure to seek Father's approval and is afraid to say the wrong thing. P.G. is anxious. Father alienates the parent-child boundary which forces Children to choose sides. This has a negative impact on his children.

TCO, dated December 18, 2020, at 31-32 (emphasis in original) (footnote omitted).

For the reasons set forth above, we conclude that Father has failed to demonstrate an abuse of discretion. *D.K.*, 102 A.3d at 478. Consequently, we affirm the custody order and deny Mother's motion to quash.

Order affirmed. Motion to quash denied.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/14/2021